UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **LEXINGTON INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | Case No. 16-cv-740 |
| ) | |
| **v.** ) | |
| ) | |
| **ZURICH INSURANCE (TAIWAN)** ) | |
| **LTD., and TAIAN INSURANCE CO.,** ) | |
| **LTD.** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, Lexington Insurance Company ("Lexington"), for its Complaint against the Defendants, Zurich Insurance (Taiwan) Ltd. ("Zurich"), and Taian Insurance Co. ("Taian"), states as follows:

## INTRODUCTION

1. Lexington seeks reimbursement from Zurich and Taian for the defense and settlement of a personal injury lawsuit against the parties' mutual insured, Trek Bicycle Corp. ("Trek"). The lawsuit arose out of a serious bicycle accident involving a mountain bike that Giant Manufacturing Co., Ltd. ("Giant") manufactured for Trek using wheel-release parts manufactured for Trek by Hubtec International Ltd. a/k/a Formula Hubs ("Formula") ("the underlying lawsuit"). Zurich and Taian each had an obligation to defend and indemnify Trek as an additional insured under insurance policies issued to Giant and Formula, respectively

2. Trek sought insurance coverage for the underlying lawsuit under commercial general and umbrella liability policies issued to Trek by Lexington, and under the policies issued by Zurich and Taian.

3. Lexington defended and indemnified Trek.

4. Although it did not dispute Trek's status as an additional insured, or the fact that the reasonable settlement value of the underlying lawsuit exceeded its policy limits, Zurich refused to contribute to Trek's defense, and refused to contribute its share of the settlement of the underlying lawsuit.

5. Taian also refused to contribute to Trek's defense, and refused to contribute its share of the settlement of the underlying lawsuit. Taian failed to provide any explanation of its coverage positon with respect to the underlying lawsuit.

6. Lexington seeks: (a) a declaration that the Zurich and Taian policies provided coverage to Trek in connection with the underlying lawsuit; and (b) reimbursement from Zurich and Taian for amounts Lexington paid to defend and settle the underlying lawsuit.

## THE PARTIES

7. Lexington is an insurance company organized and existing under the laws of the state of Delaware, with its principal place of business in Massachusetts.

8. Zurich is an insurance company organized and existing under the laws of the Republic of China, with a place of business in Taiwan.

9. Taian is an insurance company organized and existing under the laws of the Republic of China, with a place of business in Taiwan.

## JURISDICTION AND VENUE

10. An actual controversy exists between the parties hereto within the meaning of 28 U.S.C. § 2201, et seq. with respect to Zurich's and Taian's obligations to defend and indemnify Trek in connection with the underlying lawsuit.

11. Jurisdiction over this matter is founded upon diversity of citizenship under 28 U.S.C. § 1332(a) because Lexington is a citizen of a state, Massachusetts, and Zurich and Taian are citizens of a foreign state, Taiwan, and the matter in controversy exceeds $75,000.

12. This Court has general and specific jurisdiction over Zurich and Taian under Wis. Stat. § 801.05(5) and (10) because this action arises out of promises to insure Trek and/or contracts for the benefit of Trek, a business which is incorporated in Wisconsin, and has its principal place of business in Wisconsin.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the acts or omissions giving rise to this claim occurred in this District.

## FACTUAL BACKGROUND

### A. Giant Agrees To Purchase Liability Insurance Coverage For Trek Relating To Bicycles That Giant Manufactures.

14. On July 17, 2006, Trek and Giant executed a Master Purchase Order, governing bicycles manufactured by Giant under brand names Trek owned or licensed ("the Giant Master Purchase Order"). A copy of the Giant Master Purchase Order is attached hereto as Exhibit A.

15. Under the Giant Master Purchase Order, Giant agreed to maintain liability insurance of at least $5 million per occurrence, and to name Trek as an additional insured on Giant's products liability policy:

> Each party warrants and represents that as of the date of this Agreement it maintains, that it shall continue to maintain at all times during the term of the Agreement or any extension or renewal hereof, and at all times during which it has any obligation to indemnify and defend the other party, liability insurance in an amount not less than $5 million per occurrence, including coverage for comprehensive products liability. All such insurance will be with reputable insurers reasonably acceptable to the other party, and each party shall supply to the other upon request copies of all insurance certificates evidencing coverage. Giant shall name "Trek Bicycle Corporation" as named additional insured on Giant's products

3

liability policy with respect to the products Giant manufactures for and sells to Trek.

### B.     Giant Procures Coverage For Trek Under The Zurich Policy.

16.     Zurich issued to Giant Product Liability Insurance Policy No. 60-102-1000035C-00049-PDL, effective June 1, 2013 to June 1, 2014 ("the Zurich Policy"). The portions of the Zurich Policy which Zurich has provided to Lexington to date are attached hereto as Exhibit B.

17.     The Zurich Policy provides "claims-made" coverage and has limits of $10 million per occurrence.

18.     The Zurich Policy contains an endorsement under which the Zurich Policy provides "property damage" and "bodily injury" liability coverage to vendors, defined as follows:

> Vendors
>
> Any person or organization which the Insured contracts to sell or distribute their product but only in respect of Bodily Injury or Property Damage arising out of the Insured's Products sold or distributed by such vendor by a written contract enacted before the Bodily Injury or Property Damage occurs and prior agreed by Zurich.

19.     The Zurich Policy contains an endorsement identifying Trek as a "vendor."

### C.     Formula Also Agrees To Purchase Liability Insurance Coverage For Trek.

20.     On March 23, 2001, Trek issued a Purchase Order to Formula, stating Trek's intent to purchase various parts from Formula ("the Formula Purchase Order"). A copy of the Formula Purchase Order is attached hereto as Exhibit C.

21.     Under the Purchase Order, Formula agreed to maintain product or commercial general liability insurance naming Trek as an additional insured. Specifically, the Purchase Order provides:

> Supplier [Formula] shall name Trek Bicycle Corporation, its officers, directors, shareholders, subsidiaries, and employees as additional insureds on the supplier's [Formula's] product liability/commercial general liability policy using I.S.O. form CG 2026 as a mandatory endorsement.

22. I.S.O. Form CG 2026 provides, in relevant part, as follows:

> Section II – Who is an Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" cased, in whole or in part by you acts or omissions or the acts or omissions of those acting on your behalf. (A) In the performance of your ongoing operations.

**D.    Formula Procures Coverage For Trek Under The Taian Policy.**

23. Taian issued to Formula Products Liability Insurance Policy No. 07-0622C000085, effective April 1, 2013 to April 1, 2014 ("Taian Policy"). To date, Taian has refused to furnish a copy of the Taian Policy.

24. Formula provided Trek with a Certificate of Insurance identifying Trek as an "Additional insured-Vendor" under the Taian Policy. A copy of the Certificate of Insurance is attached hereto as Exhibit D.

25. According to the Certificate of Insurance, the Taian Policy has limits of $1 million.

**E.    Lexington Issues Coverage To Trek.**

26. Lexington issued to Trek Commercial General Liability Policy No. 013135996, effective September 30, 2011 to September 30, 2012 ("the Lexington CGL Policy"). A copy of the Lexington CGL Policy is attached hereto as Exhibit E.

5

27. Subject to a limit of $1 million per occurrence and its other terms and conditions, the Lexington CGL Policy provides coverage for sums an insured becomes legally obligated to pay as damages to which the Lexington CGL Policy applies.

28. Lexington also issued to Trek Commercial Umbrella Liability Policy No. 013136505, effective September 30, 2011 to September 30, 2012 ("the Lexington Umbrella Policy"). A copy of the Lexington Umbrella Policy is attached hereto as Exhibit F.

29. Subject to a limit of $25 million per occurrence and its other terms and conditions, the Lexington Umbrella Policy provides coverage for sums in excess of the "Retained Amount" that the insured becomes legally obligated to pay as damages.

30. The Lexington Umbrella Policy defines the term "Retained Amount," in relevant part, as: "The total applicable limits of 'scheduled underlying insurance' (plus any 'Self-Insured' retention applicable thereto) and any applicable 'other insurance' providing coverage to the 'Insured.'"

**F.   Trek Is Sued For Injuries Incurred On A Bicycle Giant Manufactured With Wheel-Release Parts Made By Formula.**

31. On April 9, 2012, James Giessler was riding a Trek Lush dual-suspension mountain bike, when the front wheel suddenly detached from the front fork, causing Mr. Giessler to fall violently.

32. As a result of the accident, Mr. Giessler suffered life-threatening and permanently disabling injuries, including quadriplegia.

33. The bicycle Mr. Giessler was riding had been manufactured for Trek by Giant.

34. The bicycle's front wheel-release was manufactured for Trek by Formula.

35. Mr. Giessler, his wife, and adult son filed suit against Trek, Mellow Johnny's LLC (the entity from which Mr. Giessler has rented the bike), and SRAM, LLC and Rock Shox (two manufacturers of component parts).

36. The Giesslers filed a Second Amended Complaint, which became the operative pleading, on or about March 4, 2013. A copy of the Second Amended Complaint is attached hereto as Exhibit G.

37. Mr. Giessler sought lifetime care damages, as well as damages for mental anguish and pain and suffering. Mr. Giessler's wife sought damages for loss of consortium, mental anguish, and loss of household services. Mr. Giessler's adult son sought damages as a bystander, for having allegedly witnessed the events giving rise to Mr. Giessler's injuries.

**G.     Zurich Refuses To Defend And Indemnify Trek.**

38. On May 7, 2014, Trek tendered the underlying lawsuit to Giant, seeking defense and indemnification under the applicable Zurich insurance policy.

39. Zurich failed to respond to Trek's request.

40. By letter dated July 14, 2014, Lexington requested that Zurich acknowledge its obligation to defend and indemnify Trek.

41. Lexington's July 14 letter invited Zurich to attend a mediation on July 17, 2014, and noted the impending trial date of August 25, 2016.

42. On July 15, 2014, Zurich responded to Lexington, acknowledging that it had received notice of underlying lawsuit from Giant in May 2014, and was aware of the mediation and trial dates.

7

43. According to Zurich's July 15, 2014 letter, Zurich's coverage evaluation was "in process." The letter advised: "We will respond to you further as soon as our position is determined."

44. On August 1, 2014, Lexington again wrote to Zurich, demanding that Zurich acknowledge its coverage obligations to Trek, or, at a minimum, provide its coverage position.

45. By letter dated August 12, 2014, Lexington's coverage counsel reiterated Trek and Lexington's repeated demands for defense and indemnification, and urged Zurich to contribute its policy limits toward a settlement of the case.

46. In a letter dated August 15, 2014, Zurich disputed Lexington's assessment of coverage under the Zurich Policy.

### H. Taian Refuses To Defend And Indemnify Trek.

47. On May 13, 2014, Trek tendered the underlying lawsuit to Formula, seeking defense and indemnification under the applicable Taian insurance policy. Trek's letter included a request for a copy of the applicable Taian policy.

48. Taian failed to respond to Trek's requests.

49. By letter dated July 14, 2014, Lexington requested that Taian acknowledge its obligation to defend and indemnify Trek.

50. Lexington's July 14, 2014 letter invited Taian to attend the mediation, scheduled for July 17, 2014, and noted the impending August 25, 2016 trial date.

51. Taian again failed to respond.

52. On August 1, 2014, Lexington again wrote to Taian, demanding that Taian immediately comply with its obligation to protect Trek's interests by contributing the Taian

Policy's $1 million limits toward a potential settlement of the underlying lawsuit and the funding of Trek's defense.

53. Taian did not respond.

54. By letter dated August 12, 2014, Lexington's coverage counsel reiterated Trek and Lexington's repeated demands for defense and indemnification and demanded that Taian contribute its policy limits toward a settlement of the underlying lawsuit.

55. The August 12, 2014 letter also reiterated demands that Taian provide Lexington with a copy of the relevant Taian policy.

56. To date, Taian has failed to provide its coverage position, and has failed to respond to requests for the Taian Policy.

**I.      Lexington Settles The Claims Against Trek.**

57. On August 24, 2014, the eve of trial, Trek agreed to a settlement in principle of the underlying lawsuit.

58. The confidential settlement of the underlying lawsuit was finalized on or about November 14, 2014.

59. Lexington funded the settlement of the claims against Trek.

60. Neither Zurich nor Taian paid any part of the settlement of the claims against Trek.

61. In accordance with its obligations to Trek under the Zurich Policy, Zurich should have paid its $10 million policy limits up to the amount of the settlement.

62. In accordance with its obligations to Trek under the Taian Policy, Taian should have paid its $1 million policy limits up to the amount of the settlement.

63. In addition, Lexington incurred a total of $1,004,357.68 for Trek's defense in the underlying lawsuit.

64. Neither Zurich nor Taian paid any part of Trek's defense.

65. Under the Zurich Policy, Zurich was obligated to pay Trek's defense fees and costs. Zurich's defense obligation was in addition to, and did not erode, the Zurich Policy's $10 million limits.

66. Under the Taian Policy, Taian was obligated to pay Trek's defense fees and costs. Taian's defense obligation was in addition to, and did not erode, the Taian Policy's $1 million limits.

67. Zurich refused to make its $10 million policy limits available for the settlement, and refused to pay any portion of the defense fees and costs incurred for Trek's defense.

68. Taian refused to make its $1 million policy limits available for the settlement and refused to pay any portion of the defense fees and costs incurred for Trek's defense.

## FIRST CAUSE OF ACTION
### For Declaratory Relief as to the Zurich Policy

69. The allegations set forth in paragraphs 1 to 68 are incorporated by reference as though fully set forth herein.

70. Under the Giant Master Purchase Order, Giant agreed to obtain insurance for Trek's benefit as an additional insured for products Giant manufactures, to shift the risk of damage or injury for such products from Trek and its insurers to Zurich.

71. As a seller and distributor of product manufactured by Giant, Trek is a "vendor" within the meaning of the Zurich Policy, and qualifies as an additional insured under the Zurich Policy.

72. Further, the Zurich Policy includes an endorsement identifying Trek as a "vendor."

73. The underlying lawsuit involved liability for "bodily injury" to which the Zurich Policy applied.

74. The Zurich Policy provides products liability coverage to Trek, including coverage for defense costs and expenses.

75. Lexington therefore seeks a declaration that: (a) Zurich owed a duty to pay Trek's defense costs and expenses, which payments were in addition to the Zurich Policy's $10 million indemnification limit; and (b) Zurich owed a duty to indemnify Trek, and was obligated to pay its $10 million policy up to the amount of the settlement.

## **SECOND CAUSE OF ACTION**
For Declaratory Relief as to the Taian Policy

76. The allegations set forth in paragraphs 1 to 75 are incorporated by reference as though fully set forth herein.

77. Under the Formula Purchase Order, Formula agreed to obtain insurance for Trek's benefit as an additional insured, using I.S.O. Form CG 2026 as a mandatory endorsement, to shift the risk of damage or injury resulting from Formula's operations from Trek and its insurers to Formula.

78. As set forth in the Certificate of Insurance, Trek is an "Additional insured-Vendor" under the Taian Policy.

79. The underlying lawsuit involved liability for "bodily injury" to which the Taian Policy applied.

80. The Taian Policy provides products liability coverage to Trek, including coverage for defense costs and expenses.

11

81. Lexington therefore seeks a declaration that: (a) Taian owed a duty to pay Trek's defense costs and expenses, which payments were in addition to the Taian Policy's $1 million limit; and (b) Taian owed a duty to indemnify Trek, and was therefore obligated to pay its $1 million policy limit up to the amount of the settlement.

### THIRD CAUSE OF ACTION

Reimbursement / Contribution / Equitable Subrogation - Defense

82. The allegations set forth in paragraphs 1 to 81 are incorporated by reference as though fully set forth herein.

83. Zurich and Taian each owed a duty to pay fees and costs incurred in connection with Trek's defense of the underlying lawsuit.

84. Zurich and Taian were principally liable for fees and costs incurred in Trek's defense of the underlying lawsuit.

85. Zurich and Taian refused to pay any portion of Trek's defense fees and costs.

86. Lexington paid a total of $1,004,357.68 in defense fees and costs.

87. Lexington is entitled to recover the total cost of Trek's defense, which Zurich and Taian owed to Trek under the Zurich and Taian Policies.

88. Lexington therefore seeks $1,004,357.68 from Zurich and/or Taian, plus interest and costs.

### FOURTH CAUSE OF ACTION

Reimbursement / Contribution / Equitable Subrogation – Indemnification

89. The allegations set forth in paragraphs 1 to 88 are incorporated by reference as though fully set forth herein.

90. Zurich and Taian each owed a duty to indemnify Trek in connection with the settlement of the underlying lawsuit.

91. Zurich was liable for the settlement of the underlying lawsuit up to the Zurich Policy's $10 million limit.

92. Zurich refused to pay any portion of the settlement.

93. Taian was liable for the settlement of the underlying lawsuit up to the Taian Policy's $1 million limit.

94. Taian refused to pay any portion of the settlement.

95. Lexington is entitled to recover from Zurich and Taian for amounts it paid in settlement of the underlying lawsuit.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

96. The allegations set forth in paragraphs 1 to 95 are incorporated by reference as though fully set forth herein.

97. Zurich had a duty to pay Trek's defense fees and costs, and to pay up to its $10 million policy limits in settlement of the underlying lawsuit.

98. Taian had a duty to pay Trek's defense fees and costs, and to pay up to its $1 million policy limits in settlement of the underlying lawsuit.

99. In making defense and indemnity payments owed by Zurich and Taian, Lexington conferred a benefit upon Zurich and Taian.

100. Trek and Lexington requested that Zurich and Taian defend and indemnify Trek, and Zurich and Taian refused.

101. Zurich has been unjustly enriched in an amount equal to its share of Trek's defense and indemnification under the Zurich Policy.

102. Taian has been unjustly enriched in an amount equal to its share of Trek's defense and indemnification under the Taian Policy.

103. It would be inequitable to permit Zurich and Taian to retain the benefit of Lexington's payments when such amounts were actually owed by Zurich and Taian.

104. Lexington therefore seeks to recover from Zurich and Taian for their respective shares of the $1,004,357.68 Lexington paid in defense fees and costs, and for the amounts Lexington paid in settlement of the underlying lawsuit.

**WHEREFORE**, Lexington respectfully prays that this Court enter judgment in its favor and against Zurich and Taian, on each count of this Complaint, and order Zurich and Taian to reimburse Lexington for the amounts Lexington has paid for defense of Trek in the underlying lawsuit, and for the settlement of the lawsuit, with interest, fees, and costs, and any other and further relief as this Court may deem appropriate.

Dated: November 9, 2016

Respectfully submitted,

**LEXINGTON INSURANCE COMPANY**

BY:   s/ Amy J. Collins-Cassidy
One of its Attorneys

Amy J. Collins Cassidy
Amy P. Klie
Nicolaides Fink Thorpe Michaelides Sullivan LLP
10 S. Wacker Drive, Suite 2100
Chicago, IL 60606
Phone: 312-585-1400
Fax:   312-585-1401
acassidy@nicolaidesllp.com
aklie@nicolaidesllp.com