IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEXINGTON INSURANCE COMPANY,

      Plaintiff,

 v.                   OPINION & ORDER

ZURICH INSURANCE (TAIWAN) LTD. and      16-cv-740-jdp
TAIAN INSURANCE CO., LTD.,

      Defendants.

---

  This insurance dispute arises from an accident in Texas in which a Louisiana resident was seriously injured while riding a Trek bicycle. Plaintiff, Massachusetts-based Lexington Insurance Company, insured Wisconsin-based Trek Bicycle Corp. Lexington settled a lawsuit on Trek's behalf, and now it seeks contributions from defendants Zurich Insurance (Taiwan) Ltd. and Taian Insurance Co., Ltd. Zurich and Taian insured the manufacturers of some of the components of the bicycle, and thus they are indirect insurers of Trek.

  Zurich and Taian move to dismiss for lack of personal jurisdiction and for improper venue. Dkt. 13 and Dkt. 22. The evidence shows that Zurich and Taian had only attenuated contacts with Wisconsin, and the assertion of jurisdiction would not comport with constitutional due process. The court will grant Zurich's and Taian's motions to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. All other pending motions will be denied as moot.

## FACTS

  In deciding a motion to dismiss for lack of personal jurisdiction, the court may consider the well-pleaded allegations in the complaint, affidavits, and written materials. *Kipp v. Ski Enter.*

*Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). Here, the court draws the following facts from Lexington's complaint, affidavits from the parties, and relevant contracts. The court can decide the issue on written evidence without an evidentiary hearing because the material facts are not disputed. *See Abbott Labs., Inc. v. BioValve Techs, Inc.*, 543 F. Supp. 2d 913, 918 (N.D. Ill. 2008) (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir.2002)).

Lexington is a Delaware company with its principal place of business in Massachusetts. Defendants Zurich and Taian are both insurance companies organized in the Republic of China (Taiwan).[1]

**A. The Texas lawsuit**

In 2012, Louisiana resident James Giessler rented a Trek mountain bike in Texas. The front wheel of the bike detached from the bike's frame, and Giessler sustained permanent serious injuries. Giessler, his wife, and his son filed a lawsuit in Texas against Trek, Mellow Johnny's LLC (the business that rented the bike to Giessler), and SRAM, LLC, and Rock Shox (both manufacturers of the bike's component parts). On the eve of the trial, the case settled. Lexington, an insurer for Trek, indemnified Trek and paid the settlement.

Zurich and Taian were not parties to the Texas lawsuit. Zurich had insured the manufacturer of the bike, Giant Manufacturing Co., Ltd., a Taiwanese company. Taian had insured the manufacturer of the bike wheel, Hubtec International Ltd. a/k/a Formula Hubs, also a Taiwanese company. Neither Zurich nor Taian had insured Trek directly, but they both

---

[1] Zurich has changed its name to Hotai Insurance Co. Ltd. and moved to amend the case caption to reflect its new name. Dkt. 44, at 2. But all relevant documents and the parties' briefs refer to Hotai by its old name, so the court will use its old name for clarity.

had extended insurance coverage to Trek by allowing Trek to be named as an additional insured under the policies issued to Giant and Formula Hubs. Lexington demanded that Zurich and Taian contribute to the cost of defending Trek and the settlement amount, but Zurich and Taian refused.

**B. Defendants' contacts with Wisconsin**

Neither Zurich nor Taian does business in Wisconsin. The parties agree that for the purposes of this dispute, Zurich and Taian have no contact with Wisconsin other than the insurance policies that name Trek as an additional insured. The two insurance policies at issue were negotiated and signed in Taiwan. Lexington is a party to neither policy.

**1. Zurich Policy**

The first insurance policy (the Zurich Policy) is an agreement between Zurich and Giant. Dkt. 1-2. The policy includes Giant's vendors as "[A]dditional Insured" and lists Trek as one of Giant's vendors. *Id*. at 4, 6.

Under the Zurich Policy, Zurich agreed to indemnify Giant and its vendors for "[c]ompensation resulting from judgments delivered by or obtained from a court of competent jurisdiction in the Geographical Limits" and "charges, expenses, and legal costs incurred or recoverable in the Geographical Limits." *Id*. at 12. The term "Geographical Limits" is defined as "the Geographical Limits stated in the Schedule," *id*. at 16, and the Schedule provides that the Geographical Limits is "worldwide," *id*. at 2.

The Zurich Policy also includes an arbitration clause. The clause provides,

> If any difference arises as to the amount to be paid under this Policy (liability being otherwise admitted) such difference will be referred to an arbitrator in accordance with the relevant statutory provisions in force at that time or, if there are no relevant statutory provisions in force, by agreement between Zurich and the Insured. Where any difference is by this Condition to be

3

> referred to arbitration the making of an award will be a condition
> to precedent to any right of action against Zurich.

*Id*. at 18. The Zurich Policy is governed by Taiwanese law. *Id*. at 12. The policy allows Zurich to control the litigation or settlement of any covered claim against an insured, but Zurich has no obligation to do so. *Id*. at 18.

### 2. Taian Policy

The second insurance policy at issue is an agreement between Taian and Formula Hubs (the Taian Policy). Dkt. 26-2 and Dkt. 26-4. Like the Zurich Policy, the Taian Policy's insurance coverage extends to Formula Hub's vendors. The Taian Policy as filed with the court does not include a list of Formula Hub's vendors, but such a list is contemplated. Dkt. 26-4, at 18. Taian sent Trek a certificate of insurance, and the certificate states that Trek is insured "in conjunction with" the Taian Policy. Dkt. 1-4, at 2. and Dkt. 26-2, at 1.The certificate includes a territorial limit, but the term "Territorial Limit" is defined as "Worldwide including USA/Canada." Dkt. 1-4 at 1.

Under the section titled "applicable law and jurisdiction," Taian and Formula Hub agreed to litigate their disputes applying "the law and practice" of Taiwanese courts:

> Each party agrees to submit to the jurisdiction of any court of competent jurisdiction within Taiwan and to comply with all requirements necessary to give such court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court.

Dkt. 26-2, at 12. The policy gives Taian a right, but not an obligation, to control the litigation or settlement of any covered claim against an insured. *Id*. at 10.

ANALYSIS

A.  Motions to dismiss

Zurich and Taian both contend that the court should dismiss the case for lack of personal jurisdiction under Rule 12(b)(2) and for improper venue under Rule 12(b)(3). Zurich also contends that the service of process on Zurich was improper under Rule 12(b)(5). The court will dismiss the case for lack of personal jurisdiction, and thus it need not reach the venue and service issues.

The personal jurisdiction analysis has two steps. First, the court determines whether the long-arm statute of the forum state, in this case Wisconsin, would reach the defendants. The Wisconsin statute must be construed "liberally in favor of the exercise of personal jurisdiction." *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, ¶¶ 16–17, 335 Wis. 2d 1, 13, 803 N.W.2d 623, 629. Second, the court must determine "whether the exercise of jurisdiction comports with due process requirements." *Id*. ¶ 16 (quoting *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 409, 629 N.W.2d 662, 667). "The plaintiff has a 'minimal burden' of showing that the statutory and constitutional requirements are met," and the court must resolve any "factual doubt" in favor of the plaintiff. *Id*. (quoting *Kopke*, 2001 WI 99, ¶ 8).

Neither Zurich nor Taian does business in Wisconsin, and Lexington concedes that they are not subject to general jurisdiction here. For their part, Zurich and Taian concede that their activities would satisfy Wisconsin's long-arm statute applicable to insurance actions, which applies to any action that arises from "a promise made anywhere to the plaintiff or some 3rd party," when the "person insured" was a Wisconsin resident "when the event out of which the cause of action is claimed to arise occurred." Wis. Stat. § 801.05(10). So the question here is

whether the assertion of specific jurisdiction over defendants would comport with the due process requirements under the Constitution.

Three requirements must be satisfied: (1) the defendant must have sufficient minimum contacts with the forum; "(2) the alleged injury must have arisen from the defendant's forum-related activities"; and "(3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Lexington bears the burden on the first two requirements; Zurich and Taian have the burden on the third. *See Carlson v. Fid. Motor Grp., LLC*, 2015 WI App 16, ¶ 10, 360 Wis. 2d 369, 376, 860 N.W.2d 299, 302.

1. **Minimum contacts**

The minimum-contacts analysis varies depending on the nature of the claim. *Felland*, 682 F.3d at 674. "There is no 'pendent' or 'supplemental' theory of specific personal jurisdiction," so when a plaintiff asserts multiple claims, "personal jurisdiction over the defendant must be established as to each claim asserted." *MG Design Assocs., Corp. v. Costar Realty Info., Inc.*, 224 F. Supp. 3d 621, 629 (N.D. Ill. 2016) (quoting *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1048 (N.D. Ill. 2016)).

Lexington asserts five causes of action: (1) declaratory judgment that Zurich must pay Lexington under the Zurich Policy; (2) declaratory judgment that Taian must pay Lexington under the Taian Policy; (3) "Reimbursement / Contribution / Equitable Subrogation-Defense"; (4) "Reimbursement / Contribution / Equitable Subrogation–Indemnification"; and (5) unjust enrichment. Dkt. 1, ¶¶ 69-104. The first two are contract claims, as they ask the court to interpret the Zurich Policy and the Taian Policy. The contribution claims are tort claims, and

the remainder of the claims arise under equity, although these claims are all closely related to the contract claims. Lexington does not attempt to assess jurisdiction for each of its claims separately but instead characterizes all the claims as contract claims for the minimum-contacts analysis. The court will follow suit. Lexington fares no better with tort or equitable claims, and Lexington has waived any argument that it would.

In contract cases, the question is whether the defendant availed itself of "the privilege of conducting business in the forum state." *Felland*, 682 F.3d at 674. The court considers "only the 'dealings *between the parties in regard to the disputed contract*' that are relevant to minimum contacts analysis.'" *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)) (emphasis in original). For example, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Hyatt Int'l Corp.*, 302 F.3d at 716 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). The court may also consider the parties' choice of law to see whether the defendant availed itself of the forum state's laws. *See Purdue Research Found.*, 338 F.3d at 786.

Here, Zurich and Taian have done none of the things that typically demonstrate purposeful availment of the privilege of doing business in Wisconsin. Neither Zurich nor Taian does business or advertises in Wisconsin. Neither the Zurich Policy nor the Taian Policy mentions Wisconsin. Both policies are contracts between Taiwanese companies. Both were negotiated, drafted, and signed in Taiwan. Both insurance policies are governed by Taiwanese

7

law. Trek did not participate in negotiating the policies; its only connection to these policies are through Giant and Formula Hubs, the Taiwanese companies insured by Zurich and Taian.

Nevertheless, Lexington contends that the court should find purposeful availment because (1) Zurich and Taian issued insurance policies containing worldwide coverage territory, showing that they contemplated being haled into a Wisconsin court; and (2) Zurich and Taian committed to ongoing obligations to Trek, a Wisconsin resident. The court will address each argument in turn.

    a. **Worldwide coverage**

Lexington contends that the worldwide coverage territory extended under both policies establishes purposeful availment. None of the parties (or the court) found Seventh Circuit precedent directly on point. Lexington relies on non-binding cases that have found purposeful availment when the forum state is within the coverage territory, such as *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 721 (D.C. Cir. 1986) and *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 791 (8th Cir. 2005). These cases reason that an insurer defendant has purposefully availed itself of the benefit of each forum for which it has extended coverage. A thorough explanation of this reasoning is in *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282 (10th Cir. 2007). But the view is not universally accepted, particularly when the insurance contract does not obligate the insurer to defend lawsuits in the forum. *See, King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 580 n. 10 (9th Cir. 2011); *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 138 N.J. 106, 118, 128, 649 A.2d 379, 385, 389 (1994). Still, Lexington has some persuasive authority on its side.

Against the authorities cited by Lexington, Zurich relies chiefly on the jurisdictional principles in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). In *Walden*, the Supreme Court reiterated

8

that the "minimal contacts" threshold requires that a defendant direct its activities to the forum itself, not merely to forum residents. *Id*. at 1122. *Walden* was a tort case involving a *Bivens* claim against a Georgia law enforcement officer who seized cash from Nevada residents when they were traveling through Atlanta. *Id*. at 1119. Although the officer knew that the travelers were from Nevada, and thus he knew that the harm of the seizure would be felt there, the Court held that this was not a constitutionally sufficient minimum contact with Nevada. *Id*. at 1125. In overruling the lower court decision, the Court said that the lower court's analysis "obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself." *Id*. Zurich questions whether *TH Agric. & Nutrition* would still stand after *Walden*. Although it is not manifestly clear how various principles in *Walden* would apply in a contract case, it is now decided that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself." *Id*. at 1122; *accord Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 915 (7th Cir. 2015) (applying *Walden* to a contract claim).

The grant of worldwide coverage to Giant and Formula Hubs does not entail any action directed specifically at Wisconsin. It demonstrates awareness on the part of Zurich and Taian that they might be called upon to cover Giants' or Formula Hubs' liability for accidents that occur anywhere in the world, including Wisconsin. But "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). And whether a covered accident actually occurs in Wisconsin will be the result of actions by several other parties: the insureds, Giant and Taian, decide to sell components to certain companies; those companies, like Trek, will decide where to sell their bicycles; and Trek's customers will decide where to buy and ride them. At least in terms of the coverage territory, Giant and Formula Hubs will have contacts

9

with Wisconsin based only on the actions of multiple third parties. Thus, in this case defendants' contacts with the forum state are even more attenuated than those in *World-Wide Volkswagen Corp.*, which were contacts made by third parties and not sufficient minimum contacts to establish personal jurisdiction.

Lexington argues that Zurich and Taian imposed higher deductibles based on geography, reflecting a deliberate assessment of the risks related to worldwide coverage. Dkt. 27, at 18; Dkt. 33, at 15. The Zurich Policy imposes higher deductibles for claims arising outside China or Taiwan, Dkt. 1-2, at 2, and the Taian Policy has higher deductibles for claims arising from the United States or Canada, Dkt. 26-2, at 2. But Lexington's argument on this point is undeveloped and not persuasive. Lexington does not explain how the higher deductible applicable to all claims arising in the United States and Canada reflects any intention by Zurich or Taian to avail themselves of the benefits and protections of *Wisconsin*. And without this explanation, Lexington cannot show that Zurich or Taian reasonably anticipated being haled into court in Wisconsin.

Quite to the contrary, the insurance contracts show that Zurich and Taian intended to avoid litigation in foreign states. Both policies include forum-selection clauses intended to foreclose such litigation. Zurich chose arbitration, Dkt. 1-2, at 18, and Taian chose Taiwanese courts, Dkt. 26-2, at 12. Even if these forum-selection clauses were ultimately unenforceable, as Lexington contends, they demonstrate that both Zurich and Taian expected that they would not be litigating cases in Wisconsin. The reasoning of the Tenth Circuit is informative and applicable here:

> An insurance company who issues a policy in which it agrees to defend its insured in a certain forum can undoubtedly foresee that it may have to provide a defense for its insured who is haled into court there. It does not follow, however, that by agreeing to

> defend in the forum, that the insurance company also by implication agrees that it will litigate disputes between it and its insured regarding the terms of an insurance contract in a foreign forum. While it is reasonably foreseeable that an insured would be involved in litigation with a third-party in another forum, it is not necessarily foreseeable that a dispute between the insured and the insurer over an insurance contract prepared, negotiated, and executed pursuant to Canadian law in Canada with a Canadian company would be litigated in a foreign forum where neither party has any contacts.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998). Zurich and Taian might expect to provide coverage for accidents that occur in Wisconsin, but it would not follow that they would expect to defend disputes over coverage in Wisconsin, which is what Lexington contends here. Zurich and Taian do not have sufficient minimum contacts to support jurisdiction based on the worldwide coverage territory extended to their insureds.

One last point: even if worldwide coverage territory were sufficient, it would be barely so. As the court explained in *TH Agric. & Nutrition*, sufficient minimum contacts established by the territory of insurance coverage are qualitatively weak, and thus would require defendants to make a lesser showing on the fairness prong of the analysis. 488 F.3d at 1292.

### b. Ongoing obligations to a Wisconsin resident

Lexington contends that because Zurich and Taian included Trek as an additional insured under their policies, they undertook continuing obligations to a Wisconsin resident. Indeed, there are many cases holding that an insurer who sells insurance to forum residents is amenable to personal jurisdiction in the forum. This is an extension of the principle that jurisdiction is proper "where business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state." *Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950); *accord Burger King Corp.*, 471 U.S. at 475–76.

11

But Zurich and Taian did not reach out to Wisconsin residents and offer to sell them insurance coverage. Trek, the only Wisconsin resident at issue, was insured by defendants only because Giant and Formula Hubs sold bicycle components to Trek, and defendants approved the inclusion of Trek as an additional insured. As an additional insured under those policies, Trek did not have general coverage for Trek products, but only coverage for Trek's liability that might arise from components supplied by Giant and Formula Hubs. The Taian certificate of insurance issued to Trek does not alter the Taian Policy:

> This certificate is issued as a matter of information only. This certificate does not amend, extend or alter the coverage afforded by the polices above, and all coverage terms and conditions follow the original wordings to be issued.

Dkt. 1-4, at 2. Thus, Zurich's and Taian's obligation to Trek is contingent and probabilistic, arising only when there is a claim related to components supplied by Giant or Formula Hubs. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Lexington does not allege or adduce evidence that its claims arise from the components supplied by Giant or Formula Hubs. Nor did Giessler during the Texas lawsuit; Giant and Formula Hubs were not parties in that case.

Lexington relies on two decisions to support its argument that naming Trek as an additional insured is tantamount to selling insurance to Trek, and thus a sufficient basis for personal jurisdiction: *Ridemind, LLC v. S. China Ins. Co.*, No. 14-cv-489, 2014 WL 2573310, at *1 (W.D. Wash. June 9, 2014); *Chace v. Dorcy Internatl., Inc.*, 68 Ohio App. 3d 99, 109, 587 N.E.2d 442, 448 (1991). These cases are of course not binding, although defendants have not cited any directly contrary authority dealing with jurisdiction on the basis of an "additional

insured" relationship. But defendants are correct that neither of these cases considered *Walden*, which expresses a much narrower view of personal jurisdiction. After *Walden*, the Taian certificate, which is "purely informational" on its face and only "incidental" to an existing contract, does not confer personal jurisdiction. *See Philos Techs.*, 802 F.3d at 915. And the existence of a contract with a forum resident is not, in itself, a sufficient minimum contact for jurisdictional purposes. *Id*. at 913 ("Standing alone, the fact that a foreign party has formed a contract with an in-state party is often insufficient to supply the minimum contacts required by the Constitution." (citing *Burger King*, 471 U.S. at 478)).

Defendants' connection to Wisconsin is truly attenuated, even in light of their consent to including Trek as an additional insured on the Taiwanese contracts. Zurich and Taian did not purposefully avail themselves of the privilege of doing business in Wisconsin, and they lacked sufficient minimum contacts with Wisconsin. And because Zurich and Taian had no activity related to Wisconsin, Lexington's injury did not arise from any forum-related activity.

**2. Traditional notions of fair play and substantial justice**

Even if Zurich and Taian had sufficient minimum contacts, and the case arose from forum-related activities, the court cannot exercise personal jurisdiction over a defendant if doing so would offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). To assess whether exercising personal jurisdiction comports to traditional notions of fair play and substantial justice, the court may consider five factors: (1) "the burden on the defendant"; (2) "the forum state's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the

several [s]tates in furthering fundamental substantive social policies." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010).

The first factor, the burdens on Zurich and Taian, tips against exercising personal jurisdiction. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987). Here, both Zurich and Taian are Taiwanese companies. They maintain no office and employ no agent in Wisconsin. Zurich and Taian must expend considerable resources to litigate in a foreign legal system.

The second factor, Wisconsin's interest in adjudicating the dispute, tips against exercising personal jurisdiction. Trek, the only Wisconsin resident, is not a party to this case. And Lexington does not argue that Wisconsin law should apply. Instead, Lexington contends that Wisconsin has an interest in adjudicating this case because Lexington's claim "serves a policing purpose, ensuring that a foreign insurer cannot simply ignore its coverage obligations to a Wisconsin insured." Dkt. 27, at 23. As discussed above, defendants did not directly insure Trek, so Wisconsin's interest in regulating the insurers of a Wisconsin resident is diffuse here. And this kind of "overly broad" interest has been rejected. *See Asahi Metal Indus.*, 480 U.S. at 114 (rejecting the argument that California has an interest in "protecting its consumers by ensuring that foreign manufacturers comply with the state's safety standards."). Thus, Wisconsin has no significant interest in adjudicating this case.

The third factor, Lexington's interest in obtaining convenient and effective relief, tips somewhat in favor of personal jurisdiction. Just as Zurich and Taian have the burdens of litigating here in a legal system foreign to them, Lexington will face similar burdens if it litigates

in Taiwan. But Lexington is not seeking to litigate in its home forum, so this factor weighs only slightly in Lexington's favor.

The fourth factor, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, tips against exercising personal jurisdiction. Lexington concedes that "[t]his lawsuit turns on the construction of insurance policies." Dkt. 27, at 24.[2] Both the Zurich Policy and the Taian Policy are governed by Taiwanese law. So the court cannot resolve Lexington's claims without applying Taiwanese law, and therefore the arbitrators and judges in Taiwan are better suited to address Lexington's claims. The witnesses who can testify as to the contracting parties' dealings and the manufacturing process of the bicycle parts are in Taiwan. Perhaps some witnesses who can testify about the bicycle accident are in Texas. But given Lexington's position that its claims turn on the construction of the insurance policies, any testimony of a witness in the United States is ancillary to this case. The most efficient way to resolve this case is through adjudication in Taiwan.

The fifth factor, the shared interest of nations, tips against personal jurisdiction. As the Supreme Court has explained, "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus*., 480 U.S. at 115. The nations' shared interest is "best served by . . . an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or

---

[2] Contribution claims require Lexington to show that Zurich and Taian are "liable for the same obligation" as Lexington, so the court must look to the Zurich Policy and the Taian Policy. *Kafka v. Pope*, 194 Wis. 2d 234, 243, 533 N.W.2d 491 (1995). Likewise, the reimbursement claims require Lexington to show that Zurich and Taian breached their insurance contracts with Trek. *See Fabco Equip., Inc. v. Kreilkamp Trucking, Inc*., 2013 WI App 141, ¶ 15, 352 Wis. 2d 106, 841 N.W.2d 542. As for the unjust enrichment claims, Lexington's theory is that Zurich and Taian were unjustly enriched because they did not pay for Trek's defense despite their obligations under their insurance policies. Dkt. ¶¶ 97-98.

15

the forum State." *Id*. Because Wisconsin has a minimal interest as noted above, the court concludes that the fifth factor, too, tips against exercising personal jurisdiction.

On balance, the only factor that tips in favor of exercising personal jurisdiction is the third factor, Lexington's interest. All other factors tip against exercising personal jurisdiction. The court concludes that exercising personal jurisdiction over Zurich and Taian would clearly offend traditional notions of fair play and substantial justice.

The court will grant Zurich's and Taian's motions to dismiss for lack of personal jurisdiction. The court need not reach other issues raised by the parties, such as those pertaining to venue and service.

**B. Other motions**

The parties have filed numerous motions pertaining to the arbitration proceedings between Zurich and Lexington.[3] These motions all pertain to Lexington's efforts to enjoin Zurich from arbitrating its disputes with Lexington. After Lexington filed its complaint, Zurich commenced an arbitration proceeding against Lexington in Taiwan. Lexington then moved for a preliminary injunction to enjoin Zurich from arbitrating. Before the court issued an order ruling on Lexington's motion for a preliminary injunction, the arbitral tribunal ruled against Lexington, reasoning that Lexington's claims are time-barred under Taiwanese law. Dkt. 53,

---

[3] *See* Dkt. 35 (Lexington's motion to amend complaint seeking declarations that Lexington need not arbitrate); Dkt. 36 (Lexington's motion for preliminary injunction to enjoin Zurich from pursuing arbitration); Dkt. 43 (Lexington's motion for reconsideration on the court's order to stay briefing on motion for preliminary injunction); Dkt. 46 (Lexington's motion for leave to file reply for motion for reconsideration); Dkt. 48 (Lexington's motion for leave to file notice of factual development about the ongoing arbitration); Dkt. 54 (Lexington's motion for leave to file amended complaint); Dkt. 55 (Zurich's motion to stay briefing on motion for leave to file amended complaint); Dkt. 56 (Taian's motion to stay briefing on motion for leave to file amended complaint).

¶ 12. Lexington now seeks a declaratory judgment that Lexington had no obligation to arbitrate and that the arbitration clause is unenforceable against Lexington. Dkt. 54-1, ¶¶ 123–136. The court will deny these motions.

The court lacks personal jurisdiction over Zurich, so the court cannot grant injunctive relief against it. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) ("In order for the district court's preliminary injunction to be valid, that court had to have personal jurisdiction over the defendant."). And the court will dismiss this case, so all pending motions are moot.

One last point about Lexington's resistance to arbitration. The subtext in Lexington's numerous submissions is clear: the court should hurry up and decide Lexington's motions and enjoin Zurich from arbitrating. But Lexington's request for an injunction is an extreme long shot. As the Seventh Circuit has made clear,

> Where's the irreparable injury? If AT&T loses in the arbitration, the union will seek to enforce its victory; AT&T can defend on the theory that it had not agreed to arbitrate this kind of dispute. Delay would not cause irreparable injury, so there is no justification for an injunction. All AT&T could lose from the delay is the cost of presenting the arguments to the arbitrator, and it has long been established that the expense of adjudication is not irreparable injury. . . . So fundamental is this principle that we have held it sanctionably frivolous to seek an anti-arbitration injunction.

*AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758, 762 (7th Cir. 2003) (collecting cases); *accord Sherwood v. Marquette Transp. Co., LLC*, 587 F.3d 841, 845 (7th Cir. 2009). It might not be literally impossible to get an injunction to forestall an arbitration. But this case—in which Lexington seeks compensation for a completed personal injury litigation—doesn't seem like the case in which the court should depart from its well-established approach to the topic.

ORDER

IT IS ORDERED that:

1. Defendant Zurich Insurance (Taiwan) Ltd.'s motion's to amend the case caption, Dkt. 44, is GRANTED. The clerk of court is directed to substitute Zurich Insurance (Taiwan) Ltd. with defendant Hotai Insurance Co., Ltd.

2. Defendant Hotai Insurance Co., Ltd.'s motion to dismiss, Dkt. 13, is GRANTED.

3. Defendant Taian Insurance Co., Ltd.'s motion to dismiss, Dkt. 22, is GRANTED.

4. All other motions are DENIED.

5. This case is DISMISSED.

6. The clerk of court is directed to enter judgment in favor of defendants Hotai Insurance Co., Ltd. and Taian Insurance Co., Ltd. and close the case.

Entered December 21, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge